IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH SNAPCHAT ACCOUNT "**halfeaten.pizza**" THAT ARE STORED AT PREMISES CONTROLLED BY SNAP, INC. | Case No.     3:23MJ5112 |

**Filed Under Seal**
**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Alex Hunt, a Special Agent with the Federal Bureau of Investigation (FBI), (hereinafter

Affiant) being duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for

information associated with Snapchat account id: "**halfeaten.pizza**" (hereinafter the "Target

Account"), which was created May 15, 2016, which is stored at premises owned, maintained,

controlled, or operated by Snap, Inc. (hereinafter "Snap"), a social networking company

headquartered at 63 Market Street, Venice, California 90291.  The information to be searched is

described in the following paragraphs and in Attachment A.   This affidavit is made in support of

an application for a search warrant under Title 18 U.S.C. §§ 2703(a), 2703(b)(1)(A),

2703(c)(1)(A) to require Snapchat to disclose to the government records and other information in

its possession, pertaining to the subscriber or customer associated with the user id:

"**halfeaten.pizza**".

2.      As a Special Agent of the FBI, I am an investigative or law enforcement officer of

the United States within the meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal

Procedure.  Your Affiant is engaged in the enforcement of criminal laws and is within a category

of officers authorized by the Attorney General to request and execute search warrants pursuant to Title 18 U.S.C. §§ 3052 and 3107; and DOJ regulations set forth at Title 28 C.F.R. §§ 0.85 and 60.2(a).

3.      I have been a Special Agent of the FBI since 2015 and am currently assigned to the Northwest Ohio Violent Crimes Against Children Task Force.  I was previously employed as a law enforcement officer and criminal investigator in Georgia from 2009 to 2015.  Since 2009, I have received training and have experience in interviewing and interrogation techniques, arrest procedures, search and seizure, search warrant applications, and various other crimes and investigation techniques.

4.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, officers, and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

5.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that the violation of Sexual Exploitation of Children (Title 18 U.S.C. § 2251) has been committed.  There is also probable cause to search the information described in Attachment A for evidence of these crimes, and contraband or fruits of these crimes, as described in Attachment B.

## RELEVANT STATUTES

6.      This investigation concerns alleged violations of certain activities relating to material involving the sexual exploitation of minors: 18 U.S.C. § 2251(a), 18 U.S.C. § 2252(a)(2), 18 U.S.C. § 2252A(a)(2), 18 U.S.C. § 2252(a)(4)(B), 18 U.S.C. § 2252A(a)(5)(B), and 18 U.S.C. § 2422(b).

7.      Title 18 U.S.C. §§ 2251(a) and (e) make it a federal crime for "[a]ny person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor

assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed."

8.     Title 18 U.S.C. §§ 2252(a)(2) and (b)(1), provide, in relevant part, that any person who knowingly receives, or distributes, any visual depiction using any means or facility of interstate or foreign commerce or that has been transported in or affecting interstate or foreign commerce, or which contains materials that have been transported in or affecting interstate or foreign commerce, by any means including by computer or knowingly reproduces any visual depiction for distribution using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, if the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct, or any person who attempts to do so, shall be guilty of a federal offense.  Title 18 U.S.C. §§ 2252A(a)(2) and (b)(1) provide, in relevant part, that any person who knowingly receives or distributes any child pornography or any material that contains child pornography that has been mailed, or using any means or facility of interstate or foreign commerce transported in or affecting

interstate or foreign commerce by any means, including by computer, or any person who attempts to do so, shall be guilty of a federal offense.

9.      Title 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2) provide, in relevant part, that any person who knowingly possesses, or knowingly accesses with intent to view one or more visual depictions that has been transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been so transported, by any means including by computer, if the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct, or any person who attempts to do so, shall be guilty of a federal offense.  Title 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2) provide, in relevant part, that any person who knowingly possesses, or knowingly accesses with intent to view, any material that contains an image of child pornography that has been transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been transported in or affecting interstate or foreign commerce by any means, including by computer, or any person who attempts to do so, shall be guilty of a federal offense.

10.     Title 18 U.S.C. § 2422(b) makes it a federal crime for any person, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, to knowingly, or attempts to, persuade, induce, entice, or coerce any individual who has not attained the age of 18 years to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense.

**<u>DEFINITIONS</u>**

11.     The following terms are relevant to this affidavit in support of this application for a search warrant:

12.     <u>Child Pornography</u>:   The term "child pornography" is defined at 18 U.S.C. § 2256(8).  It includes any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct), as well as any visual depiction, the production of which involves the use of a minor engaged in sexually explicit conduct.

13.     <u>Sexually Explicit Conduct</u>:   The term "sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any persons.  *See* 18 U.S.C. § 2256(2).

14.     <u>Visual Depictions</u>:   "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not it is stored in a permanent format.  *See* 18 U.S.C. § 2256(5).

15.     <u>Minor</u>:   The term "minor" means any person under the age of eighteen years.  *See* 18 U.S.C. § 2256(1).

16.     <u>Child Erotica</u>:   The term "child erotica" means any material relating to minors that serves a sexual purpose for a given individual, including fantasy writings, letters, diaries, books,

sexual aids, souvenirs, toys, costumes, drawings, and images or videos of minors that are not sexually explicit.

## TECHNICAL INFORMATION REGARDING SNAPCHAT

17.     Snapchat is a product offered by Snap, Inc. ("Snap"), a company headquartered in Venice, California.  Snapchat is a free access social networking application (or "app") that can be accessed at http://www.snapchat.com, or through downloads from application stores on individual devices.  Snapchat is an application for sending and receiving "self-destructing" messages, pictures, and videos.  These messages are commonly referred to as "snaps."

18.     A "snap" is a picture or video message taken and shared with other Snapchat users in real-time.  The sender of a snap has the option of setting a timer for how long their snap can be viewed.  Once a snap has been viewed it is deleted from Snap's system and is no longer visible to the recipient.

19.     Snapchat users can also send text messages to others using Snapchat's "Chat" feature.  Once a user leaves the Chat screen within the application, messages viewed by both the sender and the receiver will exist for only a predetermined amount of time.  Then the Snap system deletes the messages.  Snapchat further notifies other users when a user is online, and users can begin messaging each other.  In addition, Snapchat users can send pictures to other users by utilizing the camera on their device.  Pictures can also be sent from an archive of saved pictures in the photo gallery of the device.  Snapchat users compile contact lists of other users, with whom they can communicate.  In light of the foregoing, Snap constitutes a provider of an "electronic communication service" within the meaning of 18 U.S.C. § 3123.  See 18 U.S.C. §§ 3127(1) and 2510(12).

20.     A Snapchat username is a unique identifier associated with a specific account on Snapchat and cannot be changed by the user. On the other hand, a Snapchat vanity name is not a unique identifier and can be set and changed by a user or that user's friends to indicate how the user will appear within the app.  Unlike a username, a vanity name can contain special characters and symbols beyond hyphen, underscore, or period, as well as spaces, emojis, and capital letters.

21.     "Our Stories" is a collection of user submitted "snaps" from different locations and events. A Snapchat user, with the location services of their device turned on, can contribute to a collection of snaps regarding the event. For example, multiple different Snapchat users at a concert could all contribute to the same "Our Stories" collection by sharing their snaps, even if they do not know each other. Users can also view "Our Stories" events if they are not actually present at the event by subscribing to the story.

22.     A Snapchat user can keep a public photo/video diary using the "My Story" feature.  Each snap in a user's "My Story" documents the user's experience.   Based on the user's privacy settings, the photos and videos added to "My Story" can be viewed either by everyone on Snapchat or just the user's friends.  Stories are visible to other users for up to 24 hours.

23.     Snapchat has a "Group Stories" feature allowing multiple users to contribute photos and videos to the same "Story", a collection of posts that stay viewable for a limited amount of time.  Snapchat users can name their group story and invite other users by username to add content to the group story.  The group stories will disappear if 24 hours pass without a user adding a new photo or video.

24.     Snapchat "Memories" is a cloud-storage service hosted by Snapchat.  Snapchat users can save their sent or unsent snaps, posted Stories, and photos and videos from their phone's photo gallery in Memories.  A user can also edit and send snaps and create Stories from

these Memories.  Snaps, Stories, and other photos and videos saved in Memories are backed up by Snapchat and may remain in Memories until deleted by the user.

25.     In addition to photos, videos, "snaps" and stories, "Snapcash" is an online money transfer service offered by Snapchat.   The actual business platform is run by Square, Inc., the distributor of a mobile credit card reader and application.  Snapcash can be used to transfer money between Snapchat users using a linked, U.S. issued Visa or MasterCard debit card only; using credit cards is not permitted. Snapcash can only be sent to other users who have a linked debit card.  Snapcash has a $250 weekly limit but can be upgraded to a $2,500 weekly limit. Users who upgrade must provide their full name, date of birth, and Social Security number to the service.

26.     While a Snapchat message or "snap" may disappear, the record of who sent it and when still exists. Snapchat records and retains information that is roughly analogous to the call detail records maintained by telecommunications companies. This includes the date, time, sender, and recipient of a snap or message. Additionally, Snapchat stores the number of messages exchanged, which users they communicate with the most, message status including if and when the message was opened, and whether the receiver used the native screen capture function of their device to take a picture of the snap before it disappeared.

27.     Snapchat asks users to provide basic contact and personal identifying information to include date of birth.  When a user creates an account, they make a unique Snapchat username. This is the name visible to other Snapchat users. An email address is required to register a Snapchat account and a new user must also provide a mobile phone number. This phone number is verified during the registration process. Snapchat sends an activation code which must be entered before proceeding with the registration step.  However, a user may elect to bypass

entering a phone number so one may not always be present in the user's account. Snapchat also retains the account creation date.

28.     Snapchat stores device information such as the model, operating system, operating system version, mobile device phone number, and mobile network information of devices used in conjunction with the service. They also collect unique device identifiers such as the Media Access Control (MAC) address and the International Mobile Equipment Identifier (IMEI) or Mobile Equipment Identifier (MEID) of devices used to access Snapchat. In the event the Snapchat user's application crashes, the company also collects a list of other installed applications on the device to detect any potential software conflicts.

29.     In some cases, users of social networking applications will communicate directly with the application about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users.  Application providers typically retain records about such communications, including records of contacts between the user and the providers support services, as well as records of any actions taken by the provider or user because of the communications.  In addition, application providers often have records of the IP addresses used to register the account and the IP addresses associated with logins to the account.  Because every device that connects to the Internet must use an IP address, IP address information can help identify which computers or other devices were used to access the account and their geographic location.

30.     In my training and experience, evidence of who was using an application account may be found in address books, contact or buddy lists, email addresses in the account, and attachments to electronic messages, including pictures and files.

## CHARACTERISTICS COMMON TO INDIVIDUALS WHO SOLICIT SEXUALLY EXPLICIT IMAGES AND VIDEOS FROM CHILDREN

31.     Based on my training and experience, and the training and experience of other law enforcement personnel with whom I have spoken, I know that "sextortion" is a prevalent concern in the United States.  Sextortion is a type of online sexual exploitation where individuals coerce victims into providing sexually explicit images or videos of themselves, often in compliance with offenders' threats to post the images publicly or send the images to the victim's friends and family.  Offenders often target children who openly engage others online or who are active on social media.  Sextortion offenders often target multiple victims in an effort to obtain sexually explicit material of minors.  Sextortion victims often report having to meet demands for sexually explicit images and videos multiple times a day.  Sextortion offenders often target victims' minor family members and friends for sexually explicit images and videos.  That is, the offender leverages control over a victim by demanding sexually explicit material of "secondary victims," including young family members and friends.  Once a child becomes a victim of sextortion, the victimization may last for years.

## CHARACTERISTICS OF INDIVIDUALS WHO SEXUALLY COERCE, ENTICE, AND/OR EXPLOIT MINORS

32.     Based on my own experience and what I have learned from other investigators, I know that the following traits and characteristics are generally found to exist and be true in cases involving individuals who sexually coerce, entice, and/or exploit minors:

a. Individuals who engage or try to engage in sexual exploitation of minors or in sexual activity with children typically has a sexual attraction to minors.  They receive sexual gratification and satisfaction from sexual fantasies of minors, sexual activity with minors, and sometimes visual depictions of minors that are sexual in nature, sexually suggestive, and/or sexually explicit.

b.  Such individuals may collect sexually suggestive and sexually explicit materials of minors, which may consist of photographs, magazines, motion pictures, video tapes, books, slides, computer graphics or digital or other images for their own sexual gratification. These materials fuel their deviant sexual fantasies involving minors.

c.  Such individuals may seek out like-minded individuals, either in person or on the Internet, to communicate, trade sexually suggestive or explicit depictions of minors, and/or arrange to meet with other like-minded individuals for the purpose of sexual activity with minors.  This contact not only helps these child exploiters to rationalize and validate their deviant sexual interest and associated behavior, it affords them the ability to find minors with whom they can engage in sexual activity and to make arrangements to engage in sexual activity with that minor.  The different Internet-based vehicles used by such individuals to communicate with each other include, but are not limited to, P2P, e-mail, e-mail groups, bulletin boards, IRC, newsgroups, instant messaging, social media, and other similar vehicles.

d.  Individuals who engage or try to engage in sexual exploitation of minors or sexual activity with children may maintain books, magazines, newspapers and other writings, in hard copy or digital medium, on the subject of sexual activities with minors as a way of understanding their own feelings toward minors, justifying those feelings and finding comfort for their illicit behavior and desires.  Such individuals rarely destroy these materials in their entirety because of the psychological support they provide.

e.  Such individuals may collect, read, copy, or maintain names, addresses

(including e-mail addresses), phone numbers, or lists of their victims, or other persons who have advertised or otherwise made known, online or otherwise, that they have similar sexual interests, which may be maintained as a means of personal referral, exchange, or commercial profit.  These names may be maintained in notebooks, on computer storage devices, or merely on scraps of paper.

f.  Such individuals or individuals who maintain sexually suggestive or explicit materials may go to great lengths to conceal and protect such material from discovery, theft, and damage.  This may include storing it in deceptively named apps, files, and/or folders, and/or maintaining it in off-site storage, such as the cloud, which makes the material accessible even as they go from their residence to vehicle to office, and back again.

g.  Given the ubiquity of computers and smart devices, as well as their smaller, more compact size (e.g., cell phones, SD cards, or thumb drives), individuals interested in sexually exploiting minors or engaging in sexual activity with a minor typically have illicit material and evidence of communications with others about such illicit activity on at least one, but typically more than one electronic device. This is especially true as small mobile devices, like a cell phone, can go where the suspect goes, whether it is from his residence to his vehicle to his workplace, and back again.  Other electronic devices, such as a home or workplace computer, which may typically remain at one location, can also contain similar illicit communications and/or material about the sexual exploitation of minors.

33.     Based on my training and experience, and the training and experience of other law enforcement personnel with whom I have spoken, I know that individuals who solicit sexually

explicit images and videos from minors view children as sexual objects and receive sexual gratification from the material.   I know that individuals who receive sexual gratification from sexually explicit images and videos of minors often save and collect the material because it is valuable to them.  Based on my understanding of Snapchat's "Memories" service, and individual who solicits sexually explicit material from a minor over Snapchat can take a screenshot of that material and save the material produced by the minor in the "Memories" cloud-storage. I further know that those who derive gratification from sexually explicit images of minors sometimes engage in hands-on sexual molestation of minors.  Such individuals sometimes communicate, or attempt to communicate, with minors online for the purpose of grooming, meeting, or sexually exploiting the minor.

## **PROBABLE CAUSE**

34.    On 01/30/2023, Maumee Police Division received a complaint from the grandmother of an identified 12-year-old female MINOR VICTIM who had grave concern for her granddaughter after accessing the telephone that she had allowed MINOR VICTIM to utilize.  She discovered nude images of her MINOR VICTIM granddaughter, and she suspected that MINOR VICTIM was sending Child Sexual Abuse Material (CSAM) to men.

35.    The grandmother provided Maumee Police Division (MPD) with her cell phone that she had provided to MINOR VICTIM.  MPD requested that Toledo Police Department (TPD) create and analyze an image the device, which TPD did.  MPD also personally reviewed the Snapchat Application on the telephone and determined that MINOR VICTIM had produced of herself, CSAM in the form of photographs and videos, including masturbation.  Those CSAM images and videos were sent by MINOR VICTIM to multiple Snapchat account users.

36.     One of the alleged recipients of MINOR VICTIM's CSAM was Snapchat Application id: "**halfeaten.pizza**", with display name: "xander".   A review of the MINOR VICTIM's Snapchat account revealed that "Alexander" was a contact of hers.   The only saved Snapchat with him was a message from him on 02/02/2023 which stated to the VICTIM MINOR: "Bro are you even grounded still".

37.     On 02/27/2023, an FBI Child Adolescent Forensic Interviewer (CAFI) interviewed the 12-year-old female MINOR VICTIM. MINOR VICTIM was asked about her contact with Snapchat user "**halfeaten.pizza**" (Investigation subsequently determined the end-user is Alexander Joseph Wright **JONES**).

38.     MINOR VICTIM advised that **JONES'** name was "Alexander" and that he stands out to her because she spent time with him in person.   She was only with him once.   He "Quick Added" her on Snapchat likely during December 2022.   His account name was "**halfeaten.pizza**".   All their electronic communications were done through Snapchat.   He sent her photograph(s) of his genitals; he never sent her videos of himself.   MINOR VICTIM sent "inappropriate" pictures of herself to **JONES**.   She sent him photographs of her breasts.   She also sent (**JONES**) multiple photographs of her genitals.   She sent **JONES** those types of photographs of herself because he asked her for pictures with that content.   At some point previously, she had taken the pictures of herself, with her cell phone.   She sent (CSAM) of herself to **JONES** through Snapchat.   She also sent **JONES** some (CSAM) of herself which were saved on her phone, through Snapchat.   She sent **JONES** the (CSAM) of herself before they met in person.

39.     About a month after having "normal conversation" on Snapchat and sending him the (CSAM) upon his request, MINOR VICTIM spent time with **JONES** in person.   They "hung out" at her identified minor female friend's house in Maumee, Ohio.   **JONES** brought drugs with

him: marijuana and DMT, which MINOR VICTIM described as being similar to cocaine and acid - "stuff like that".  When he arrived the three of them started talking and "did drugs and stuff".  **JONES**, MINOR VICTIM, and her friend all consumed the drugs, and MINOR VICTIM's friend went to bed.  During their chats, **JONES** said that he was 19[1], and she told him that she was 12.  She told him that she was 12 early in the Snapchatting and he "winked at me and said that we could still be friends." She took a photograph of him with her phone when they were together.

40.     MINOR VICTIM stated that they went into the back seat of his car, and he placed his hands on her.  He touched her breasts and the part she uses "to pee".  She thinks that her shirt was still on, but her pants were removed.  **JONES's** hands went inside her body part that she uses to "go pee".  His hands were on her breasts, skin to skin.  She placed her mouth on his penis in the backseat.  This occurred around approximately 4am, and her friend was asleep in her room. When **JONES** was finished, she went inside, and he drove off.  This event occurred during the first or second week of January 2023.

41.     Utilizing FBI Cleveland's platform "OPERATION INTERNET RESCUE GROUP II UCO", on 03/02/2023, posing as our MINOR VICTIM while utilizing her Snapchat account, FBI OCE-7478 actively communicated with **JONES'** "**halfeaten.pizza**" account and wrote: "Heyyy".  On that same day, "**halfeaten.pizza**" then wrote: "Well well well".  Over the course of the following two (2) weeks, some of the chatting between **JONES** using his "**halfeaten.pizza**" Snapchat account, and the FBI OCE who **JONES** thought was the 12 year old MINOR VICTIM included, but is not limited to:

JONES: "But nothin much just work and moving being high and horny (emojis)"

OCE: "Just excited for my bday this month"

---

[1] Defendant is 23 years of age.

JONES: "Oh hell yeah sounds dope"

"Any plans for it?"

"Damn dead already huh"

OCE: "No nothin really"

"Ill be 13 not like I can drive"

JONES: "Oh word"

OCE: "Where ur new place at"

JONES: "On hill ave"

"Should be fully moved by Friday if you are ungrounded by now lol"

OCE: "Lol I do wut I want"

JONES: "Oh really miss sassy"

"Should be fully moved by Friday if you are ungrounded by now lol"

JONES: "Just been mad horny for no reason lately"

OCE: "lolzzz me too"

JONES: "You tryna hit me with some shit hot mama I Needa nut lmao"

JONES: "Actually, can I get a booty pic please lol"

OCE: "Nah."

JONES: "If you Needa talk bout some or ever feel sad I gotchu tho"

OCE: "Aw thx babe"

"Wyd"

JONES: "Still just chillin waiting for my bed lmfao..."

OCE: "lol wut kinda bed"

JONES: "A big bed (emoji with horns)"

OCE: "(Emoji with horns) I like big beds"

JONES: "(picture of mattress)"

"It's here"

OCE: "Nice!"

JONES: "Plenty of room for activities"

OCE: "Mmmm yesss"

JONES: "When you gonna come over for em"

OCE: "Hey"

"U want me too?"

JONES: "When I'm fully moved (emoji)"

JONES: "Nothin much just workin on getting deems extracted"[2]

"In the mood to do nasty shit like always lol"

"You know, the norm (emoji laugh crying)"

OCE: "(emoji tongue out)"

"oh ya?..."

JONES: "(emoji wink/make face)"

"Too bad no one to do nasty shit with rn"

OCE: "Oh"

JONES: "You aint over here girl (emoji laugh crying)"

"Why whatchu thinkin hot stuff"

OCE: "Who u want to do nasty shit with"

JONES: "You duh who else lol"

"Tryna send a few selfies tho?"

OCE: "No u arnt"

"U just want pics silly"

JONES: "I can never turn down pics (emoji laugh crying)

"But what if I am tho?"

OCE: "If u r wut?"

JONES: "Tryna fw you"

"Goofy ass"

OCE: "Lolz I might want u to"

JONES: "lk I'm tryna fuck yo nice ass up (emoji with horns)"

OCE: "(emoji drooling) Oh are u..."

JONES: "Tryna put you to sleep (emoji wink)"

OCE "When"

JONES: "When we both free I'm game"

JONES: "We could do shrooms or acid or some when you come over tho (emoji)"

---

[2] Note: "deems" is a street name for the schedule 1 narcotic "DMT".

OCE: "I'm down"

   "But I don't have a way to get there"

JONES: "I can pick you up and drop you back off"

JONES: "Keep playin around like that an imma send a video of me jacking off n nutting"

OCE: "...U just miss pics"

JONES: "No"

   "I missed everything that came with you"

   "But pics are just a bonus"

   "And I haven't seen you in too long mane can u blame me?"

JONES: "...I'm ngl tho lowkey horny now and thinkin bout you riding my face sounds great rn"

OCE: "Omg that's hot"

JONES: "You're hot"

   "I wanna make you cum on my face"

OCE: "Thanks bab"

   "When"

JONES: "Rn"

OCE: "Ok"

JONES: "Tryna fuck you like an animal man"

   "Drilling your shit"

OCE: "How bad u want it"

JONES: "Treat you like my personal fuck toy"

   "Pretty bad mama"

42.    FBI Cleveland sent a subpoena to Snapchat for the end-user of Snapchat ID: "**halfeaten.pizza**".  On 03/17/2023, your Affiant received the following response Snapchat for that account:

   display name: xander

   Phone number: 419-350-8555

   Email: halfeatenpizza@gmail.com

   Created:     05/15/2016

Creation IP:   72.241.183.2

43.     Using the above information, as well as the photograph of **JONES** on the MINOR

VICTIM's telephone as she described in her CAFI interview, **JONES** was positively identified as:

Alexander Joseph Wright **JONES**, DOB: 09/19/1999 (23 years of age).

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

44.     I anticipate executing this warrant under the Electronic Communications Privacy

Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant

to require Snap, Inc. to disclose to the government copies of the records and other information

(including the content of communications) particularly described in Section I of **Attachment B**,

as they pertain to the Target Accounts described in **Attachment A**.  Upon receipt of the

information described in Section I of **Attachment B**, government-authorized persons will review

that information to locate the items described in Section II of **Attachment B**.

45.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not

required for the service or execution of this warrant.  I therefore request authority for the warrant

to be executed at any time of the day or night.

## NON-DISCLOSURE REQUEST

46.     Pursuant to Title 18 U.S.C. § 2705(b), I request that the Court enter an order

commanding Snap not to notify any person, including the subscriber(s) of the Target Accounts of

the existence of the search warrants for 180 days, subject to further extension by the Court.

47.     Snap Inc., is a provider of electronic communications services as defined in 18

U.S.C. § 2510(15).  This Court has authority under 18 U.S.C. § 2705(b) to issue "an order

commanding a provider of electronic communications service . . . to whom a warrant, subpoena,

or court order is directed, for such period as the court deems appropriate, not to notify any other

person of the existence of the warrant, subpoena, or court order."  Id.

48.     In this case, such an order would be appropriate because the attached warrant relates to an ongoing investigation, the scope of which has not been disclosed to the user(s) of "**halfeaten.pizza**".  Disclosure of the warrants would alert the user(s) of "**halfeaten.pizza**" that the Government has identified the aforementioned accounts as relevant to the investigation.  In turn, notice could lead the user(s) of "**halfeaten.pizza**" to change their patterns of behavior and destroy other evidence about the Government's investigation.  I note that these warrants arise in the midst of an investigation into the user(s) of "**halfeaten.pizza** ", individual(s) who have yet to be identified. Such disclosure could compromise law enforcement's ongoing efforts to collect further evidence, identify and arrest the offenders.

## REQUEST FOR SEALING

49.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize the investigation.

## **CONCLUSION**

50.     Based on the forgoing, I request that the Court issue the proposed search warrant. Because Snap Inc., can provide the data responsive to this search warrant at any time, and investigators will search them in accordance with Attachment B, I request permission to conduct the searches at any time of the day or night.

_____
Alex Hunt
Special Agent
Federal Bureau of Investigation


Subscribed and sworn before me this 22nd day of March, 2023.



_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE